Argued and submitted September 30, 1999, affirmed June 28, 2000

## STATE OF OREGON,
*Respondent,*

*v.*

## PATRICK OWEN CARDEW, JR.,
*Appellant.*

(97CR2593; CA A103359)

7 P3d 631

Andrew S. Chilton, Deputy Public Defender, argued the cause for appellant. With him on the brief was David E. Groom, Public Defender.

Jonathan H. Fussner, Assistant Attorney General, argued the cause for respondent. With him on the brief were Hardy Myers, Attorney General, and Michael D. Reynolds, Solicitor General.

Before Edmonds, Presiding Judge, Deits, Chief Judge,* and Armstrong, Judge.

---

* Deits, C. J., *vice* Warren, S. J.

ARMSTRONG, J.

**ARMSTRONG, J.**

Defendant appeals from an order revoking his diversion agreement and from his subsequent conviction for driving under the influence of intoxicants (DUII), ORS 813.010(1)(a). He assign's error to the trial court's conclusion that he violated his diversion agreement by not attending his treatment program. We affirm.

Just after midnight on November 30, 1997, a police officer observed defendant driving erratically. The officer also noted that defendant's license plate light was too dim to illuminate his license plate sufficiently. Based on those two factors, the officer stopped defendant and, after detecting an odor of alcohol in the cab of defendant's truck, administered several field sobriety tests to him. After defendant had failed most of the tests, he was arrested for DUII. Defendant thereafter filed a petition to enter into a DUII diversion agreement with the court. ORS 813.200 *et seq*. The state did not object, and the trial court granted the petition. Under the agreement, the DUII charge was stayed pending successful completion or termination of the diversion agreement. The agreement required defendant

> "to attend a diagnostic assessment to determine the possible existence of an alcohol or drug abuse problem and to pay the cost of the assessment directly to the agency providing the assessment[,]
>
> "* * * * *
>
> "[and] * * * to complete at [his] own expense, or as arranged with the Mental Health Division if qualified as an indigent person, the program of treatment indicated as necessary by the diagnostic assessment."

As part of the agreement, defendant also promised to pay a diversion filing fee; a separate order specified that the diversion filing fee was $327 and that defendant was to pay it in monthly installments of $40 each. The payments were to begin on February 1, 1998, and were due on the first of each month thereafter.

Defendant reported to AMBIT, the agency to which the trial court referred him for evaluation, and he paid the

required assessment fee directly to AMBIT. AMBIT evaluated defendant, determined that he needed an informational program (rather than a rehabilitation program), and referred him to another agency, Columbia County Mental Health Services (Columbia County), for that program. According to defendant, Columbia County demanded that he pay another assessment fee and instructed him that he needed a six-month drug abuse program, rather than the four-week alcohol program that AMBIT had directed that he receive.[1] Apparently as a consequence of the costliness and length of the Columbia County program, defendant did not participate in it. AMBIT subsequently reported defendant's noncompliance with the treatment program to the district court. In addition to failing to attend the treatment program, defendant did not make the scheduled $40 payments on February 1 or March 1. On March 10, defendant was ordered to appear and show cause why his diversion should not be terminated for failure to pay the diversion filing fee and for failing to attend treatment.

On March 23, 1998, defendant appeared as ordered. He waived his right to an attorney and requested that the diversion revocation hearing be held immediately because he lived some distance from the courthouse. At the hearing, defendant testified that he had in fact paid the $80 due on the diversion filing fee; he elaborated that, on March 9, he wrote a check to cover his two delinquent payments. The trial court acknowledged receipt of the $80 but did not indicate when it had received that amount. Defendant also testified that he did not attend the treatment program at Columbia County because he could not afford the cost of treatment, because Columbia County specified a longer program than did AMBIT, because Columbia County's program was directed at drug rather than alcohol abuse, and because Columbia County demanded a second evaluation fee. At the conclusion

---

[1] The record contains very little documentation as to defendant's contact with the two agencies. It contains a one-page record of an initial evaluation, which is presumably from AMBIT. The evaluation states that defendant had admitted only to occasional drinking and directs that he participate in an informational rather than a rehabilitation program. It also reflects a referral to Columbia County. The record also contains a letter to the court from AMBIT recommending that defendant's diversion be terminated because of his decision not to attend the specified treatment program.

of the hearing, the trial court terminated the diversion agreement because of defendant's failure to comply with the payment schedule and his failure to attend the treatment program. It stated that defendant had the burden to bring any problems he had with Columbia County to the attention of the court promptly. After a jury trial, defendant was convicted of DUII and sentenced to two days in jail, his driver's license was suspended for one year, and he was ordered to pay $1,000 in fines and attorney fees.

Defendant assigns error to the trial court's revocation of the diversion agreement. He argues that his failure to attend the more onerous Columbia County program did not constitute a violation of the diversion agreement because the agreement required only that he comply with the treatment program specified in his initial evaluation. We review for errors of law and affirm.

ORS 813.255 provides, in part:

"(3) The court shall terminate the diversion agreement and continue the offense proceeding if:

"(a) At the hearing on the order to show cause, the court finds by a preponderance of the evidence that any of the reasons for termination described in this section exist * * *

"* * * * *

"(5) The court shall terminate a diversion agreement under this subsection for any of the following reasons:

"(a) If the defendant has failed to fulfill the terms of the diversion agreement."

Thus, the statute requires termination of a diversion agreement if the court finds that a defendant has failed to fulfill its terms. The trial court specified two grounds for its revocation of the diversion agreement, both of which relate to defendant's noncompliance with the agreement: defendant's failure to make the scheduled payments toward his diversion filing fee and his failure to attend the treatment program. Although defendant has assigned error to the trial court's revocation of the diversion agreement, all of his arguments focus on the court's conclusion that his failure to attend the

Columbia County treatment program violated the agreement. He makes no argument with respect to the court's conclusion that his failure to make timely payments toward his diversion filing fee also violated it. Consequently, unless revocation for failure to make timely payments constitutes error apparent on the face of the record, we must affirm the revocation on the payment ground without reaching defendant's arguments about his failure to attend the treatment program. *See, e.g., State ex rel SOSCF v. Duncan*, 164 Or App 610, 614, 993 P2d 818, *rev den* 330 Or 361 (2000).

We conclude that the decision to terminate the diversion agreement based on defendant's failure to comply with the payment schedule was not error apparent on the face of the record. ORAP 5.45(2). In *Ailes v. Portland Meadows, Inc.*, 312 Or 376, 381, 823 P2d 956 (1991), the Supreme Court explained the test for determining under ORAP 5.45(2) whether an error is apparent on the face of the record. It held

> "that the error must be one 'of law'; that it must be 'apparent,' *i.e.*, the point must be obvious, not reasonably in dispute; and that it must appear 'on the face of the record,' *i.e.*, the reviewing court must not need to go outside the record to identify the error or choose between competing inferences, and the facts constituting the error must be irrefutable."

*Id.* at 381-82 (citations omitted). Here, defendant agreed "to pay to the court a diversion filing fee." A supplemental order, which the trial judge signed on the same day that defendant signed the diversion agreement, required defendant to pay the $327 diversion filing fee in monthly installments of $40, beginning on February 1, 1998. The order further provided that, if defendant did not pay as scheduled, he had to appear in court at 9:00 a.m. on the next judicial day. Defendant did not make his February and March payments as scheduled, nor did he appear in court immediately after missing the payments. ORS 813.255(3)(a) provides that the trial court "shall terminate the diversion agreement" if it finds that a defendant failed to fulfill its terms. At a minimum, it is reasonably in dispute whether defendant failed to fulfill the terms of the agreement by not complying with the payment schedule in the supplemental order. Accordingly, any error in the trial court's revocation of the diversion for defendant's failure to

comply with the payment schedule is not apparent on the face of the record. We therefore affirm the trial court's revocation of the diversion agreement and defendant's subsequent conviction for DUII.

Affirmed.